UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JUSTIN D. : | |
| : | |
| v. : | C.A. No. 22-00009-JJM |
| : | |
| KILOLO KIJAKAZI, Commissioner : | |
| Social Security Administration : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on January 6, 2022, seeking to reverse the Decision of the Commissioner. On June 1, 2022, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security. (ECF No. 11). On June 27, 2022, Defendant filed a Motion to Affirm the Commissioner's Decision. (ECF No. 13). A Reply was filed on July 29, 2022. (ECF No. 15).

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions, and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (ECF No. 11) be GRANTED and that the Commissioner's Motion to Affirm (ECF No. 13) be DENIED.

I.    PROCEDURAL HISTORY

On August 16, 2019, Plaintiff filed applications for SSI (Tr. 231-240) and DIB (Tr. 243-246) alleging disability since June 3, 2018.  The applications were denied initially on October 31, 2019 (Tr. 157, 158-165) and on reconsideration on April 18, 2020.  (Tr. 168-173, 174-179).  Plaintiff requested an Administrative Hearing.  On December 17, 2020, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. 136-152).  The ALJ issued an unfavorable decision to Plaintiff on January 12, 2021.  (Tr. 119-131).  The Appeals Council denied Plaintiff's request for review on November 8, 2021.  (Tr. 1-4).  Therefore, the ALJ's decision became final.  A timely appeal was then filed with this Court.

II.   THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly evaluate his rare sleep disorder (Kleine-Levin Syndrome ("KLS")) and should have further developed the record by either requesting an opinion from Dr. McCool, Plaintiff's treating sleep specialist, or reconvene the hearing with testimony from a medical expert, preferably a sleep specialist or neurologist.

The Commissioner disputes Plaintiff's claims and argues that the substantial evidence standard requires affirmance in this case.

III.  THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of HHS,

955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Treating Physicians

Substantial weight should be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R

§ 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving

...

only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote

v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V.     **APPLICATION AND ANALYSIS**

A.     **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ concluded that Plaintiff's KLS was a "severe" medically determinable impairment. (Tr. 124). He assessed an RFC for a limited range of light work. (Tr. 127). At Step 5, the ALJ found that Plaintiff's RFC did not preclude the performance of certain sedentary unskilled jobs and thus he was not disabled. (Tr. 131).

B.     **The ALJ's Conclusions Regarding Plaintiff's RFC are not Supported by the Record**

This is a unique case that frankly does not fit the mold. Plaintiff was evaluated by Dr. McCool, a sleep specialist, and diagnosed with KLS after testing and ruling out sleep apnea and narcolepsy. (Exh. 1F). Based on this evidence of record, the ALJ found that Plaintiff's KLS was a medically determinable impairment and that it significantly limited Plaintiff's ability to perform basic work activities. (Tr. 124). Thus, it is undisputed for these purposes that Plaintiff has KLS and that it is a "severe" impairment.

What is KLS? It is a rare neurological sleep disorder notable for recurring periods of hypersomnia and altered behavior. See Maltz v. Saul, 2019 WL 3852599 at *4 (D. Conn. Aug. 16, 2019); and (Tr. 46-58). The issue is how KLS limits one's ability to work. Plaintiff argues that his KLS causes excessive and unpredictable absences which prevents him from sustaining full-time employment. (ECF No. 11-1 at p. 18; Tr. 151). The ALJ summarized Plaintiff's description of his condition as follows:

> The claimant alleges he cannot work secondary to a sleep disorder. He will sleep for two to three days at a time, so he cannot hold a scheduled job. He is difficult to wake when in one of these sleep cycles. He cannot make himself stay awake. After sleeping for two to three days, he will be awake for an entire day. When awake, he is dysfunctional and has difficulty concentrating. This happens every week and has been ongoing since he was in high school. He took lithium to treat his sleep, but it was not helpful, but for experiencing some better mood. He stated he kept a sleep diary for a month, and aside from lithium, he has been recommended to have a healthy diet to control his diabetes.

(Tr. 127).

The ALJ assessed an RFC for a limited range of light work with no limitations related to absences, tardiness, or off-task behavior which might be expected in a case involving KLS. The ALJ did, however, ask the VE about the impact of "occasional absences" on work capacity, and the VE testified that it would preclude full-time competitive employment for someone with Plaintiff's RFC. (Tr. 151). Thus, the issue of absences related to KLS was apparently on the ALJ's radar but never directly addressed in his decision.

In his decision, the ALJ, as noted above, accepts that Plaintiff has KLS and that it is a severe impairment. Plaintiff's work history and the description of his symptoms and limitations is consistent with KLS and, in part, form the basis of Dr. McCool's diagnosis. The ALJ never directly finds in his decision that Plaintiff was being untruthful in describing his symptoms to his medical providers including Dr. McCool or untruthful when testifying under oath at the ALJ hearing. The state agency consultants concluded that Plaintiff's statements about the intensity, persistence and functionally limiting effects of his KLS symptoms were substantiated by the "objective medical evidence alone." (Tr. 162, 172). The ALJ, however, does not agree and finds that Plaintiff's allegations are "inconsistent because the longitudinal evidence of record does not support them." (Tr. 128). As support, the ALJ asserts that "[t]he majority of [Plaintiff's] claim is based on somatic complaints, without many findings on sleep studies or physical examinations to

confirm diagnosis, or support his testimony." Id. This assertion is plainly unsupported by the record and contradicted by the testing done and conclusions reached by Dr. McCool.

The ALJ also asserts that "[a]lthough [Plaintiff] reports hypersomnia, he is consistently alert and fully oriented with normal mental status." (Tr. 128). The ALJ generally cites Exhibit 1F for this conclusion. Id. Exhibit 1F is thirty-one pages and consists of records from Dr. McCool and the Roger Williams Hospital Sleep Disorder Clinic. There are two pages of that record (Tr. 372 and 385) which document that Plaintiff was found to be alert, fully oriented with a normal mental status at two appointments. This evidence simply does not support the description of "consistently" used by the ALJ. Also, there is no indication that Plaintiff was experiencing a KLS episode during either of those appointments and, as noted, the conclusion of that evaluation and testing was that Plaintiff's described condition and history was supportive of a KLS diagnosis. Again, the ALJ's assertion is not supported by the record.

Additionally, the ALJ faults Plaintiff for not seeking treatment after October 2019. (Tr. 129). However, there is no indication that there was any additional treatment available to Plaintiff for KLS or offered to Plaintiff at that point. Dr. McCool prescribed Lithium which Plaintiff apparently utilized for a period but without any improvement in his sleep issues. (Tr. 9). The ALJ also concluded that Plaintiff's reported activities of daily living are inconsistent with a finding of disability. (Tr. 129). This finding reflects a fundamental misunderstanding of KLS and the issue at hand. Plaintiff does not claim that his KLS prevents him from performing such activities when awake and not experiencing an episode of KLS. Rather, he claims that the episodes are disabling because they cause excessive and unpredictable work absences which prevents him from sustaining full-time employment as evidenced by his prior work history.

Finally, the Commissioner places heavy reliance on the state agency consulting opinions (Exh. 3A) as constituting substantial evidence in support of the ALJ's findings. Although the ALJ's RFC determination finds support in these opinions, the consultants simply do not directly address the dispositive issue of whether Plaintiff's KLS would result in excessive absences from work. In fact, as noted above, the reports find that Plaintiff's statements about the functional impact of his KLS are substantiated by the objective medical evidence. (Tr. 162, 172). Those statements include Plaintiff's assertion that the excessive sleep episodes caused by his KLS have resulted in work absences and loss of many jobs over the years. (E.g., Tr. 175). The Commissioner unpersuasively argues that the state agency consulting opinions that Plaintiff could do sedentary to light work without mental restrictions "encompasses a finding that he could do such work 'on a regular and continuing basis.'" (ECF No. 13 at pp. 11-12) (emphasis added). While that inference might be drawn in most cases, this case does not fit the mold. It is simply too much of a stretch on this record to infer that the consultants' finding that Plaintiff can physically perform a limited range of light work also implicitly means that they also found that his KLS would not result in excessive work absences. This is particularly true when you consider that those opinions endorsed Plaintiff's statements about the impact of his KLS on work attendance and job losses as being "substantiated" by the medical evidence of record. (Tr. 162, 172).

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal (ECF No. 11) be GRANTED and that the Commissioner's Motion to Affirm (ECF No. 13) be DENIED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, In. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 26, 2020